UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 13 |
| SCOTT H. BLUMSACK ) | Case No. 21-40248-EDK |
| ) | |
| Debtor ) | |

**UNITED STATES TRUSTEE'S
MOTION TO DISMISS CHAPTER 13 CASE AND
OBJECTION TO CONFIRMATION OF
DEBTOR'S CHAPTER 13 PLAN**

William K. Harrington, the United States Trustee for Region 1 ("UST"), hereby moves the Court to dismiss Scott H. Blumsack's chapter 13 case for "cause" under 11 U.S.C. § 1307(c), because he is ineligible for chapter 13 relief, and continuance of his case requires administration of assets resulting from criminal activity.

The UST also objects to confirmation of Mr. Blumsack's chapter 13 plan (Docket #24) ("Plan") filed on April 26, 2021, because Mr. Blumsack cannot demonstrate that the Plan has been "proposed in good faith and not by any means forbidden by law" under 11 U.S.C. § 1325(a)(3).

Dismissal is therefore in the best interests of creditors and the estate.

## PRELIMINARY STATEMENT

On April 26, 2021, Mr. Blumsack filed Schedule "I" (Docket #20 at pp. 24-25) to disclose that he was employed in "sales" at Green Star Herbal, a recreational marijuana dispensary.

Debtor's counsel has recently informed the UST that Mr. Blumsack is no longer employed by Green Star Herbal, but instead currently works at Tyca Green, Inc., which is also a marijuana dispensary.

While legal under Massachusetts law, selling marijuana, or possessing it with intent to distribute, is a Federal crime under the Controlled Substances Act of 1970 ("CSA" ), 21 U.S.C. § 812 *et seq*.

Post-petition wages are property of the estate under 11 U.S.C. § 1306, and the Debtor relies on wages that are derived from an illegal business to effectuate the chapter 13 Plan.

Violations of the CSA preclude the Court from finding that the Plan (or any plan) "has been proposed in good faith and not by any means forbidden by law" under 11 U.S.C. § 1325(a)(3), barring confirmation. Because he can confirm no plan, Mr. Blumsack is ineligible for chapter 13 relief.

Moreover, continuance of the case will require the chapter 13 trustee and the Court to administer assets resulting from activity criminalized by the CSA.

Accordingly, the Court should enter orders denying confirmation of Mr. Blumsack's chapter 13 plan and dismissing his chapter 13 case for "cause" under 11 U.S.C. § 1307(c).

In support, the United States Trustee states:

## JURISDICTION, VENUE AND LEGAL BASIS FOR RELIEF

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3. Venue is proper in this court under 28 U.S.C. §§ 1408 and 1409.

4. The legal basis for relief includes 28 U.S.C. §§ 586(a)(3), 11 U.S.C. §§ 307, 1307(c) and 1325(a) and Fed. R. Bankr. P. 1017.

## FACTS

5. Mr. Blumsack filed this chapter 13 case on April 1, 2021.

6. Mr. Blumsack claimed as his principal asset a single-family home located at 2 Old Homestead Road, Groton, MA 01450, and valued at $663,927.00. Docket #20 at 3 (original schedules and SOFA).

7. Mr. Blumsack also listed a 50% ownership interest in a limited liability corporation named Massachusetts Athletics, LLC, which was valued at $0.00.

Docket #20 at 6.

8. Mr. Blumsack listed as an asset "potential counterclaims in Reilly, Kevin M. et al. vs. Blumsack, Scott H. et al., Docket No. 1581CV03645" in the amount of "unknown." Docket #20 at page 8.

9. He also listed as assets potential state and federal tax refunds for 2019-2020 in the amount of $2,000.00, and amounts estimated at $8,706.00 for denied unemployment claims. Docket #20 at page 7.

10. In his Schedule "I" Mr. Blumsack listed that he had "just started" in sales at Green Star Herbal. The Debtor listed his gross monthly wages in the amount of $1,560.00.

11. Green Star Herbal is a retail dispensary of cannabis (or marijuana), a controlled substance under the CSA.

12. The UST has been informed by counsel to the debtor that Mr. Blumsack recently left Green Star Herbal for a job at Tyca Green, Inc., which is also a marijuana dispensary.

13. On April 26, 2021, the Debtor filed a Chapter 13 Plan. The Plan provides for payments of $250.00 for 36 months. The unsecured claims, which total $578,191.01, will be paid from a pot totaling $5,100.00. The estimated dividend is .8%.

14. On May 3, 2021, Matrix Services Corporation, holder of a security interest in the Debtor's real estate, filed an objection to the Plan. Docket #25.

15. On May 28, 2021, the Massachusetts Department of Revenue filed an objection to the Plan. Docket #37.

16. On June 24, 2021, the Chapter 13 Trustee filed an objection to the Plan. Docket #44.

I. **Statutory Framework**

   A. **The Controlled Substances Act of 1970, 21 U.S.C. § 801 et seq.**

17. Marijuana is a Schedule 1 controlled substance under the CSA. *Gonzales v. Raich*, 545 U.S. 1, 10-15 (2005) (holding that the CSA's criminalization of the manufacture, distribution or possession of marijuana by intrastate growers and users for medical purposes did not violate the Commerce Clause).

18. Notwithstanding that numerous states, including Massachusetts, have enacted laws in recent years permitting the retail distribution of marijuana, it is still "a federal crime 'to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance' . . . ." *In re Way to Grow, Inc.*, 610 B.R. 338, 344 (D. Colo. 2019) (affirming order dismissing chapter 11 case of a business that sold equipment and supplies to persons and entities

growing marijuana, because it could not satisfy the good faith requirement of 11 U.S.C. § 1129(a)(3) to confirm a plan) (*quoting* CSA § 841(a)(1)). *Burton v. Maney (In re Burton)*, 610 B.R. 633, 634 (B.A.P. 9th Cir. 2020).

19. People who aid and abet violations of the CSA also commit a crime. *In re Way to Grow, Inc.*, at 344 "'Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal . . . .'" *Id*. (*quoting* 18 U.S.C. § 2(a)).

   **B.**  **11 U.S.C. §§ 541(a) and 1306(a)(1) & (2).**

20. Section 541(a) broadly defines "property of the estate" to include "wherever located and by whomever held . . . all legal or equitable interests of the debtor in property as of the commencement of the case . . . ." *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) (affirming order requiring IRS to turn over assets seized pre-petition, subject to the debtor's providing adequate protection).

21. In chapter 13 cases, section 1306(a)(1) and (2) expand the scope of property of the estate to include "(1) all property of the kind specified in [section 541(a)] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and (2) earnings from services performed by the debtor after the commencement of the case . . . .").

### C. 11 U.S.C. §§ 1307(c) and 1325(a)(3).

22. Section 1307(c) of the Bankruptcy Code provides that, "on request of a party in interest or the United States trustee and after notice and a hearing," the court, "for cause," may dismiss a case under chapter 13 or convert the case to chapter 7, "whichever is in the best interests of creditors and the estate . . . ." Subsection (c) sets forth a non-exclusive list of 11 causes justifying dismissal or conversion. *See Stevenson v. TND Homes, I, LP (In re Stevenson)*, 583 B.R. 573, 579-580 (B.A.P. 1st Cir. 2018) (citations omitted).

23. Section 1325(a)(3) requires that in order for a chapter 13 plan to be confirmed, it must have "been proposed in good faith and not by any means forbidden by law . . . ." *See* Charles Jordan Tabb, LAW OF BANKRUPTCY § 12.15 (3d ed. 2013) (collecting cases and summarizing a 12 element "totalities of the circumstances" test for good faith, including "the burden which the plan's administration would place upon the trustee . . . ."). *See Arenas v. United States Trustee (In re Arenas)*, 535 B.R. 845, 851 (B.A.P. 10th Cir. 2015).

24. "Cause" to dismiss a chapter 13 case exists under 1307(c) where the debtor can confirm no plan, and continuance of the case would require the trustee to administer assets representing proceeds of an illegal business. *Id.* at 845 (affirming orders denying chapter 7 debtors' motion to convert to chapter 13 and dismissing

case, because any chapter 13 plan would be funded by profits from a marijuana business in violation of the CSA, precluding a finding that any plan "has been proposed in good faith and not by any means forbidden under section 1325(a)(3)" and requiring dismissal under section 1307(c)) (*citing Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007).

25. A debtor who proposes to continue to engage in ongoing illegal activity through employment at a company that sells marijuana in violation of the CSA cannot obtain a discharge in bankruptcy. *See* 11 U.S.C. § 1325(a)(3). Nor should this Court condone the ongoing illegal activity by confirming a plan that is funded directly or indirectly through income derived from employment at a marijuana enterprise in violation of the CSA. Therefore, this case should be dismissed under 11 U.S.C. § 1307.

    I.    **ARGUMENT**

> **The Court Should Deny Confirmation Of Mr. Blumsack's Chapter 13 Plan, Because He Cannot Demonstrate That It "Has Been Proposed In Good Faith And Not By Any Means Forbidden By Law" As Required By Section 1325(a)(3).**
>
> **The Court Should Dismiss Mr. Blumsack's Case Under Section 1307(c), Because He Can Confirm No Plan And Is Therefore Ineligible To Be A Chapter 13 Debtor.**

**And The Court Should Dismiss Mr. Blumsack's Case Under Section 1307(c), Because Continuance of His Case Will Require The Chapter 13 Trustee And The Court To Administer Assets Resulting From Criminal Activity.**

26. As a retail sales associate in a marijuana enterprise, Mr. Blumsack engages in the illegal activity of possessing and facilitating the distribution of marijuana in violation of the CSA. Mr. Blumsack receives compensation in exchange for this illegal activity, and he relies on those same wages to make his chapter 13 plan feasible. Plans that facilitate the continuing post-petition violation of federal law are, per se, proposed in bad faith and preclude a finding that any plan "has been proposed in good faith and not by any means forbidden by law" under section 1325(a)(3). Because he cannot confirm a plan, Mr. Blumsack is ineligible for relief under chapter 13.

27. Moreover, continuance of the case will require the chapter 13 trustee and the Court to administer assets resulting from activity criminalized under the CSA. The ongoing and continuing illegal activity needed to effectuate the Debtor's chapter 13 plan in this case constitutes a separate "cause" for dismissal.

28. Accordingly, the Court should deny confirmation of the Plan and dismiss Mr. Blumsack's case under 11 U.S.C. § 1307(c).

29. Denial of confirmation and dismissal are supported by numerous recent

decisions holding that debtors cannot use the Bankruptcy Code to benefit from marijuana-related activities that violate the CSA. These cases include *Arenas*, *Johnson*, and *Burton* which address the issue in the context of chapter 13.

### 1. *Arenas*

30. In *Arenas*, the chapter 7 debtors owned a two-unit commercial building. Mr. Arenas used one to grow marijuana. The debtors rented the second to a marijuana dispensary. *In re Arenas*, 514 B.R. 887, 888 (Bankr. D. Colo. 2014) ("*Arenas I*"), aff'd 535 B.R. 845 (B.A.P. 10th Cir. 2015) ("*Arenas II*").

31. The chapter 7 trustee withdrew a no asset report when the renters expressed an interest in purchasing the building. *Arenas I*, 514 B.R. 877 at n. 7. The United States Trustee moved to dismiss the case under 11 U.S.C. § 707(a). *Id.* at 889. The debtors then moved to convert to chapter 13 under 11 U.S.C. § 706(a). *Id.* at 892.

32. Citing *Marrama*, the bankruptcy court denied the conversion motion under 11 U.S.C. § 706(d), finding that "their reorganization would be funded from profits of an ongoing criminal activity under federal law and would necessarily involve the Chapter 13 Trustee in administering and distributing funds derived from the Debtors' violation of the [CSA] . . . ." *Id.* at 892. Thus, the debtors could not demonstrate that any chapter 13 plan was "proposed in good faith and not by any

means forbidden by law" and they were, therefore, ineligible for chapter 13. *Id*. at 894.

33. The Tenth Circuit Bankruptcy Appellate Panel affirmed, reasoning that good faith is objective, not subjective, and it was "objectively unreasonable for [the debtors] to seek Chapter 13 relief . . . ." *Arenas II*, 535 B.R. at 852-53.

**2.** *Johnson*

34. In the case of *In re Johnson* the debtor had income from legal sources, but also earned part of his income from a medical marijuana business. *In re Johnson*, 532 B.R. 53 (Bankr. W.D. Mich. 2015).

35. The debtor proposed to segregate his marijuana derived income and pay only his legally derived income to the chapter 13 trustee for distribution.

36. The court rejected this approach finding that to the extent the debtor wished to continue deriving income from the marijuana business, he could not obtain bankruptcy relief, *id*. at 58, and he "cannot conduct an enterprise that admittedly violates federal criminal law while enjoying the federal benefits the Bankruptcy Code affords him," *id*. at 59.

37. The court summarized succinctly that "it is not asking too much of debtors to obey federal laws, including criminal laws, as a condition of obtaining relief under the Bankruptcy Code." *Id*.

### 3. *Burton*

38. In *Burton v. Maney (In re Burton)*, 610 B.R. 633 (B.A.P. 9th Cir. 2020), the chapter 13 debtors owned a 65% interest in a non-operating LLC, Agricann, that was engaged in the marijuana business. Agricann filed a post-petition state court action for breach of a contract under which it was to cultivate, grow, and sell medical marijuana.

39. The bankruptcy court issued an order requiring the debtors to show cause why their case should not be dismissed for their involvement with a business that was illegal under the CSA.

40. The debtors responded that they did not "currently derive income from any entity involved in the marijuana industry . . . ," and they stated that they did not expect to share in any recovery from the state court litigation. *Id*. at 635. They then moved to abandon their interest in Agricann. *Id*.

41. The bankruptcy court dismissed the debtors' case under 11 U.S.C. § 1307(c). It found that their ownership interest in the LLC alone constituted "cause," "because the continuation of the case would likely require the trustee or the court to become involved in administering the proceeds of the Agricann litigation, which the court implicitly found would be tainted as proceeds of an illegal business . . . ." *Id*. at 639.

42. On appeal, the Ninth Circuit BAP, after discussing much of the case law set out herein, affirmed because "[t]he Burtons failed to demonstrate that their ties to Agricann would not result in proceeds of an illegal business becoming part of the bankruptcy estate, requiring the trustee and the court to administer assets that constitute proceeds of activity criminalized by the CSA." *Id*. at 640-41.

43. In Mr. Blumsack's case, his wages are direct proceeds from a marijuana business. Because this violates the CSA he thus cannot propose any plan that complies with section 1325(a)'s requirements that it "has been proposed in good faith and not by any means forbidden by law" and that "the action of the debtor in filing the petition . . . [must have been] in good faith." 11 U.S.C. §§ 1325(a)(3) & (7).

44. The fact that the Debtor is an employee of the marijuana business, rather than the owner of that business, does not alter the fact that his source of income is illegal under the CSA. Liability under the CSA is broadly defined and extends not only to the owners of controlled substances, but also to those who possess or dispense marijuana, as well as to persons who assist or conspire with violators of the CSA. *See* 21 U.S.C. §§ 841, 846; 18 U.S.C. § 2; *see also United States v. García–Torres*, 280 F.3d 1, 4 (1st Cir. 2002) ("[a]ncillary functions like accounting, communications, and strong-arm enforcement are all examples of peripheral

services that, when performed in the service of drug dealers, can support a conspiracy conviction."); *In re Medpoint Mgmt.*, LLC, 528 B.R. 178, 185 (Bankr. D. Ariz. 2015), *vacated in part on other grounds*, B.A.P. No. AZ-15-1130, 2016 WL 3251581 (B.A.P. 9th Cir. 2016) (dismissing an involuntary chapter 7 petition against firm engaged as a manager of a marijuana business, and noting that firm was potentially criminally liable under accomplice liability provisions of the CSA).

45. If this case continues, Mr. Blumsack's wages would become property of the estate when earned, 11 U.S.C. §§ 541(a) and 1306(a)(2), and would require the chapter 13 trustee to administer proceeds from activity criminalized by the CSA. This was recognized by the *Arenas*, *Johnson*, and *Burton* courts as untenable. *See also In re Way to Grow, Inc.*, 597 B.R. 111, 120 (Bankr. D. Colo. 2018) ("a bankruptcy case cannot proceed where the court, the trustee or the debtor-in-possession will necessarily be required to possess and administer assets which are either illegal under the CSA or *constitute proceeds* of activity criminalized by the CSA." (emphasis added); *In re Malul*, 615 B.R. 699, 713-14 (Bankr. D. Colo. 2020) ("[A]llowing Malul to schedule the claims while also requiring Trustee to abandon them would confer a federal benefit upon Malul while she is engaged in an ongoing violation of federal law. On the other hand, Trustee cannot do anything regarding those claims without administering an illegal asset.").

46. It would be extraordinary for a *federal* court to compel a trustee to administer illegal assets. The court ought not impose that burden on the Chapter 13 trustee; to do so would constitute an independent "cause" to dismiss under 11 U.S.C. § 1307(a).

47. Courts have also recognized the gravity of a federal court's own entanglement with the administration of illegal proceeds in aid of a debtor engaging in the criminal conduct. The *Johnson* court cautioned that "federal judicial officers take an oath to uphold federal law, and countenancing the Debtor's continued operations of his marijuana business under the court's protection is hardly consistent with that oath." *Johnson*, 532 B.R. at 56. In *Arenas II,* the Tenth Circuit BAP highlighted judges' oaths to uphold federal law as a critical factor in upholding dismissal of the case (stating debtors are caught between a business the state deems legal "but which the laws of the United States—laws that every United States Judge swears to uphold—proscribe and subject to criminal sanctions."). 535 B.R. at 854; *see also In re Basrah Custom Design, Inc.*, 600 B.R. 368, 379 (Bankr. E.D. Mich. 2019) (stated that "a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime . . . .") (citation and internal punctuation omitted). See, also *In re Andrick*, 604 B.R. 577, 580–81 (Bankr. D. Colo. 2019); *In re Rent-Rite Super Kegs W. Ltd.*,

484 B.R. 799, 805 (Bankr. D. Colo. 2012).

48. Accordingly, the Court should deny confirmation of the plan and dismiss Mr. Blumsack's case for "cause" under 11 U.S.C. § 1307(c). *Id*.

## REQUESTED RELIEF

For these reasons, the United States Trustee requests that the Court enter orders: 1) denying confirmation of the Plan; 2) dismissing the Debtor's chapter 13 case; and 3) granting him all such other and further legal and equitable relief to which he may be entitled.

        Respectfully submitted,

        WILLIAM K. HARRINGTON
        UNITED STATES TRUSTEE
        REGION 1

By:   */s/ Stephen E. Meunier*
       Stephen E. Meunier BBO#546928
       United States Department of Justice
       Office of United States Trustee
       446 Main Street, 14th Floor
       Worcester, MA 01608
       PHONE:   (202) 590-8695
       FAX:   (508) 793-0558
       stephen.meunier@usdoj.gov

Dated: September 15, 2021.

## CERTIFICATE OF SERVICE

      I certify that on September 15, 2021, true and correct copies of the foregoing motion were served via CM/ECF only upon the individuals who have filed notices of appearance in the Court's CM/ECF database, including the Debtor's attorney.

                                      WILLIAM K. HARRINGTON
                                      UNITED STATES TRUSTEE
                                      REGION 1

By:    */s/ Stephen E. Meunier*
           Stephen E. Meunier BBO#546928
           United States Department of Justice
           Office of the United States Trustee
           446 Main Street, 14th Floor
           Worcester, MA 01608
           PHONE:   (202) 590-8695
           FAX:        (508) 793-0558
           stephen.meunier@usdoj.gov

Dated:  September 15, 2021.