## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

| In re:<br>  Scott H. Blumsack,<br>     Debtor |
|---|

Case No. 21-40248
Chapter 13

### DEBTOR'S POST-TRIAL BRIEF IN OPPOSITION TO UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 13 CASE AND OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

**COMES NOW** Scott H. Blumsack, the Debtor in the above-captioned matter, and through counsel respectfully submits the within Post-Trial Brief in Opposition to United States Trustee's (hereinafter "UST") Motion to Dismiss Chapter 13 Case and Objection to Confirmation of Debtor's Chapter 13 Plan. This matter was submitted largely on stipulated facts (see Joint Pre-Trial Statement, Doc. No. 145). On March 11, 2022, this court held a brief evidentiary hearing where the UST offered exhibits and the Debtor briefly testified. With no facts in dispute, before this court are questions of law as to whether a debtor who is a mere employee of a cannabis retailer lawful under Massachusetts regulatory scheme can be a debtor in a Chapter 13 bankruptcy proceeding, and if so, whether he can propose a plan funded in part by his wages. Within the instant brief, Debtor focuses on issues raised at the hearing, incorporates prior arguments, and suggests that both questions should be answered

in the affirmative, but in the event this court answers the
second question in the negative, Debtor proposes to fund his
plan from an alternative source unrelated to cannabis.  This is
an issue of first impression in Massachusetts, if not
nationwide.  Cases cited by both sides in prior submissions and
arguments address debtors who are stakeholders in cannabis-
related enterprises, landlords, or actual enterprises
themselves.  No case has addressed a mere employee, such as the
Debtor herein.

## I.  CANNABIS IS NOT A BAR TO OBTAINING RELIEF IN FEDERAL COURTS

"Cases involving marijuana-related individual and non-
individual debtors have become the boogeyman of bankruptcy
jurisprudence." In re Cwnevada LLC, 602 B.R. 717, 728 n.25
(Bankr. D. Nev. 2019).  However, "the mere presence of marijuana
near a bankruptcy case does not automatically prohibit a debtor
from bankruptcy relief." Burton v. Maney (In re Burton), 610
B.R. 633, 637 (B.A.P. 9th Cir. 2020).

In the instant case, the UST argues that "federal courts
should not use equitable powers to facilitate illegal marijuana
businesses[.]"  UST Post-Hearing Brief, Doc. No. 173 at p. 16.
However, this is exactly what the First Circuit has recently
done in finding that Maine's restrictions on cannabis business
ownership were unconstitutional under the dormant commerce

clause despite the federal illegality of cannabis.  Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me., 45 F.4th 542 (1st Cir. 2022).  There, the First Circuit rejected the proposition that a party "should not be able to receive a constitutional remedy in federal court to protect the sale and distribution of a controlled substance which remains illegal under federal law."  Id. at 557.

In short, contrary to the UST's position, cannabis does not preclude availability of relief in federal courts.

## II.    DISMISSAL FOR CAUSE UNDER § 1307(c) IS NOT WARRANTED

The UST agues for dismissal "for cause" under § 1307(c), citing lack of good faith.  While good faith is not an explicitly enumerated cause listed in § 1307(c), "[t]he list of grounds for dismissal or conversion found in § 1307 is not exhaustive[.]"  Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341 B.R. 371, 382 (B.A.P. 1st Cir. 2006).  Indeed, lack of good faith, often referred to as 'bad faith,' is a factor that may warrant dismissal under § 1307.  Id.  Good faith in filing the petition is also a prerequisite to confirmation.  11 USC § 1325(a)(7).  This requirement is independent of the good faith requirement in the proposal of the plan.  11 USC § 1325(a)(3).

Courts use different approaches in order to determine whether a debtor has filed a bankruptcy petition in good

faith.  The majority of courts use a "totality of the circumstances test" to determine whether a debtor exercised good faith in filing a Chapter 13 petition for purposes of § 1307(c).  One of our panels took a slightly different approach in Keach v. Boyajian (In re Keach), 243 B.R. 851, 856 (B.A.P. 1st Cir. 2000), urging that a bankruptcy court's primary analysis should not be rooted in the debtor's prepetition history if the instant case demonstrates a debtor's simple honesty of purpose. Other panels and courts have criticized Keach, and opted for the more expansive "totality of the circumstances" test. Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 210-11 (B.A.P. 1st Cir. 2005); [In re] Dicey, 312 B.R. 456 [(Bankr. D.N.H. 2004)]; [In re] Fleury, 294 B.R. 1 [(Bankr. D. Mass. 2003)]; In re Scotten, 281 B.R. 147, 149 (Bankr. D. Mass. 2002); and [In re] Virden, 279 B.R. 401 [(Bankr. D. Mass. 2002)].

In applying the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith, bankruptcy courts generally consider the following factors: (1) the debtor's accuracy in stating her debts and expenses, (2) the debtor's honesty in the bankruptcy process, including whether he or she has attempted to mislead the court and whether he or she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) the debtor's motivation and sincerity in seeking Chapter 13 relief.

Gonzalez-Ruiz, 341 B.R. at 382-83 (some internal citations omitted).

In the instant case, the UST has not pointed to any facts that invoke any the Gonzalez-Ruiz factors (nor can he, because there are none).  Instead, the UST argues that the mere suggestion of ostensible criminal conduct negates good faith in the filing of the petition.  This argument is unavailing.  As one court observed:

It is worth noting, however, that bankruptcy courts have a long history of considering cases involving debtors whose activities and operations have included past, present and possibly ongoing violations of applicable non-bankruptcy, civil and criminal laws. See, e.g., Midlantic Nat'l Bank v. New Jersey Dept. of Envt'l Prot., 474 U.S. 494, 106 S.Ct. 755, 88 L. Ed. 2d 859 (1986) (voluntary Chapter 11 of waste oil processor that possessed leaking containers of cancer-causing substances in violation of state and local law was converted to Chapter 7, rather than dismissed); In re Freedom Industries, Inc., Case No. 14-bk-20017 (Bankr. S.D. W.Va. Jan. 17, 2014) (voluntary Chapter 11 filed by chemical producer after chemical spill contaminated Elk River; Chapter 11 plan of reorganization confirmed even though the debtor and officers were subsequently sentenced for criminal violations of the federal Clean Water Act and federal Refuse Act). See also NCR Staff, Catholic Dioceses and Orders that Filed for Bankruptcy and Other Major Settlements, National Catholic Reporter (May 31, 2018), available at https://www.ncronline.org/news/accountability/catholic-diocesese-and-orders-filed-bankruptcy-and-other-major-settlements (last visited May 31, 2019) (listing all Catholic diocese bankruptcy proceedings filed from July 6, 2004 through approximately February 28, 2018, to address sexual abuse claims against clergy).

In re Cwnevada LLC, 602 B.R. at 728 n.25.

The tale of Agriprocessors, Inc., further illustrates this point. Agriprocessors, Inc., was the largest kosher meat-packing plant in the United States headquartered in Postville, Iowa[1].

On May 12, 2008, U.S. Immigration and Customs Enforcement executed a criminal worksite enforcement operation at Agriprocessors' plant. The majority of Agriprocessors' workers were undocumented immigrants. During the raid, a total of 389 workers at the plant

---

[1] See https://en.wikipedia.org/wiki/Agriprocessors (last visited November 18, 2022).

were arrested. The raid led to numerous federal criminal charges, including a high-profile case against Agriprocessors' then-President, Sholom Rubashkin.

As a result of financial difficulties following the May 2008 immigration raid, Agriprocessors filed a Chapter 11 bankruptcy petition on November 4, 2008. The case was eventually converted to Chapter 7. In the Chapter 7, SHF [Industries] purchased virtually all of Agriprocessors' assets, including the processing plant – now run by SHF under the name Agri-Star.

In re Nevel Props. Corp.[2], No. 09-00415, 2012 Bankr. LEXIS 551, at *2-3 (Bankr. N.D. Iowa Feb. 17, 2012).

In re: Agriprocessors, Inc., Docket No. 08-02751, United States Bankruptcy Court for the Northern District of Iowa, spawned extensive litigation, including over 145 Adversary Proceedings, most brought by the Chapter 7 Trustee Joseph E. Sarachek. See CM/ECF United States Bankruptcy Court for the Northern District of Iowa, https://ecf.ianb.uscourts.gov//cgi-bin/iqquerymenu.pl?77608 (last visited November 18, 2022). The issues of ongoing illegal labor practices and other crimes, tracing assets to the fruits thereof, or the trustee administering assets potentially tainted by criminal activity do not appear to have been raised, and did not preclude Agriprocessors, Inc., from seeking and obtaining relief under the Bankruptcy Code.

---

[2] While the debtor in Nevel Props. leased land to Agriprocessors, Inc., this case is being cited solely because it provides a concise summary of the events leading up to the Agriprocessors, Inc., bankruptcy.

The UST further cites In re Johnson, 532 B.R. 53, 59 (Bankr. W.D. Mich. 2015), for the proposition that "[t]he Debtor has the burden of proof to show that the Debtor's case has been proposed [sic] in good faith" and that in the instant case "[t]he Debtor has produced no evidence to support such a finding and fails to meet his burden." UST Post-Hearing Brief, Doc. No. 173 at p. 11. This is a misstatement of the law, as Johnson makes no mention of which party carries the burden of showing good faith. On the contrary, the sole mention of 'good faith' in Johnson is the finding that "the [Johnson] Debtor filed his case in good faith, and it is quite obvious from his credible testimony that he is in dire need of bankruptcy relief and the court's assistance." In re Johnson, 532 B.R. at 59.

It is well established that "[u]nder Section 1307(c), the objecting creditor bears the burden of proof". In re Virden, 279 B.R. at 407. Further, "Section 1307(c) does not specifically require that a debtor file a petition in good faith. Instead, Section 1307(c) provides that a petition may be dismissed 'for cause.' Dismissal for cause cannot mean that a debtor must show an absence of cause; it can only mean that the party moving for dismissal must demonstrate cause. As such, the burden was on the [movant creditor] to show lack of good faith." In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992) (internal citations omitted).

Here, the UST has failed to meet this burden.

"[D]ismissal orders typically are measures of last resort, reserved for extreme cases." Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir. 2005) (discussing dismissal as a sanction). This is because dismissal is a draconian remedy. See generally In re Holman, 567 B.R. 599, 608 (Bankr. D. Kan. 2017).

In the instant case, on the record before the court, absent a showing of bad faith as to any of the factors outlined in Gonzalez-Ruiz, 341 B.R. at 382-83, the UST's Motion to Dismiss must be denied.

## III.   DEBTOR HAS NOT PROPOSED THE PLAN BY ANY MEANS FORBIDDEN BY LAW

UST's argument regarding the § 1325(a)(3) requirement that "the plan has been proposed in good faith and not by any means forbidden by law" misconstrues the language of the statute.  UST argues that the ostensible violation of the CSA precludes a good faith finding.  However, courts have interpreted the identical language in § 1129(a)(3)[3] to apply only to the steps taken in ***proposing*** the plan or seeking confirmation, not its underlying terms.

---

[3] "Section 1325(a)(3) parrots the language in Section 1129(a)(3), and requires the court to find that a proposed Chapter 13 plan 'has been proposed in good faith and not by any means forbidden by law.' 11 U.S.C. § 1325(a)(3)." In re Cwnevada LLC, 602 B.R. at 731 n.33.

In Irving Tanning Co. v. Me. Superintendent of Ins., 496

B.R. 644 (B.A.P. 1st Cir. 2013), the court rejected the argument

that a plan was proposed by means forbidden by applicable

nonbankruptcy law because certain provisions of the plan

violated state self-insurance laws:

> Section 1129(a)(3) focuses not on the terms of the plan
> and its means of implementation but on the manner in
> which the plan "has been proposed." 11 U.S.C. §
> 1129(a)(3) (emphasis added); In re Buttonwood Partners,
> Ltd., 111 B.R. 57, 59 (Bankr. S.D.N.Y. 1990) ("it must
> be construed that the term 'means forbidden by law'
> subsumes some conduct in connection with obtaining
> confirmation of such proposal"); In re Sovereign Group,
> 1984-21 LTD, 88 B.R. 325 (Bankr D. Colo. 1988) (purpose
> of § 1129(a)(3) is to insure that proposal of plan be
> done not in a way forbidden by law; its focus is on the
> conduct manifested in obtaining the votes for
> confirmation); 7 Collier on Bankruptcy, ¶ 1129.02[3][b],
> 1129-28 (16th ed. 2013) ("the statute requires denial of
> confirmation if the plan is 'proposed' by 'forbidden'
> means"). Courts from time to time, without discussion,
> construe subsection (a)(3) to require conformity of the
> terms of the plan to applicable nonbankruptcy law, but
> we are aware of none that have expressly squared that
> understanding with subsection (a)(3)'s express focus on
> the manner of the plan's proposal. The Appellees, whose
> gripe is with the substance of the Plan, have alleged no
> fault in the manner in which the Debtors have proposed
> it or attempted to obtain its confirmation.

Irving Tanning Co. v. Me. Superintendent of Ins., 496 B.R. at

660.

UST's misplaced and overly broad extension of § 1325(a)(3)

to aspects of the plan beyond its manner of proposal appears to

have its roots in In re Rent-Rite Super Kegs W. Ltd., 484 B.R.

799, 809 (Bankr. D. Colo. 2012) (similarly interpreting this

identical language in § 1129(a)(3)).  Since then, a number of

lower courts followed this interpretation in the cannabis

context.  See, e.g., Arm Ventures, LLC, 564 B.R. 77, 84 (Bankr.

S.D. Fla. 2017), In re Arenas, 514 B.R. 887, 892-93 (Bankr. D.

Colo. 2014), aff'd, 535 B.R. 845, 853 (B.A.P. 10th Cir. 2015)

("We affirm [on other grounds] and need not address whether the

debtors' plan was 'proposed by any means forbidden by law.'"),

In re McGinnis, 453 B.R. 770, 772 (Bankr. D. Or. 2011).

However, the only circuit-level case addressing this issue

in the cannabis context[4], Garvin v. Cook Invs. NW, SPNWY, LLC,

922 F.3d 1031 (9th Cir. 2019), readily adopted First Circuit's

Irving Tanning interpretation:

> Like the First Circuit Bankruptcy Appellate Panel, we
> conclude that § 1129(a)(3) directs courts to look ***only
> to the proposal of a plan***, not the terms of the plan.
> Irving Tanning Co. v. Me. Superintendent of Ins. (In re
> Irving Tanning Co.), 496 B.R. 644, 660 (B.A.P. 1st Cir.
> 2013).  This reading accords with both the statutory
> text, which does not refer to the substance of the plan,
> and the weight of persuasive authority. See In re Gen.
> Dev. Corp., 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991)
> ("Courts addressing the issue have uniformly held that
> Section 1129(a)(3) does not require that the contents of
> a plan comply in all respects with the provisions of all
> nonbankruptcy laws and regulations." (internal quotation
> marks omitted)).

---

[4] As cited above, the 10th Circuit did not reach this issue.  In re
Arenas, 535 B.R. 845, 853 (B.A.P. 10th Cir. 2015) ("We affirm [on
other grounds] and need not address whether the debtors' plan was
'proposed by any means forbidden by law.'").

Garvin v. Cook Invs. NW, SPNWY, LLC, 922 F.3d 1031, 1035 (9th Cir. 2019) (emphasis added).

The Ninth Circuit in Garvin noted that courts that interpreted § 1129(a)(3) as a mandate to look to the terms of the plan have "fail[ed] to 'square[] that understanding with subsection (a)(3)'s express focus on the manner of the plan's *proposal*.'"  Id. (quoting Irving Tanning, 496 B.R. at 660) (emphasis as in original).

In analyzing the language of the statute, the Garvin court observed:

> [T]he phrase "not by any means forbidden by law" modifies the phrase "[t]he plan has been proposed." An interpretation that reads the words "has been proposed" out of the second prong of the requirement would be grammatically nonsensical, i.e., "The plan has been … not by any means forbidden by law." Moving the reference to illegality to before "proposed" fares no better, i.e., "The plan, not by any means forbidden by law, has been proposed in good faith." The Trustee's position would require us to rewrite the statute completely, rather than resort to its clear meaning. See Duncan v. Walker, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)).
> A contrary interpretation not only renders the words "has been proposed" meaningless, but makes other provisions of § 1129(a) redundant. For example, § 1129(a)(1) requires that "[t]he plan complies with the applicable provisions of this title." If § 1129(a)(3) is read to mean that the plan must comply with all applicable law, there would be no need for a separate requirement that the plan comply with the provisions of the Bankruptcy Code specifically.

Garvin, 922 F.3d at 1035.

In short, "[the Ninth] Circuit specifically rejected the
notion that § 1129(a)(3) forecloses confirmation of a plan that
relies on income from criminal activity, as held by some
bankruptcy courts considering whether to dismiss a case based on
a debtor's involvement in the marijuana business. The court
acknowledged that there may be consequences[5] arising from a
debtor's connections with criminal activity, but denial of
confirmation under § 1129(a)(3) is not one of them."  Burton v.
Maney (In re Burton), 610 B.R. 633, 637 n.8 (B.A.P. 9th Cir.
2020) (internal citations omitted) (footnote not in original).

Here, UST makes the same unavailing argument in the context
of § 1325(a)(3).  But applying the Garvin analysis, where the
language of § 1325(a)(3) is identical to that of § 1129(a)(3),
and because the UST has not pointed to any evidence in the
instant case (nor can he, because there is none) that the Debtor
engaged in bad faith or illegality in ***proposing*** the plan, the
UST's Objection to Confirmation for an alleged violation of §
1325(a)(3) must be overruled.

---

[5] Confirmation of a plan of course does not insulate debtors from
prosecution for criminal activity, even if that activity is part of
the plan itself. In re Food City, Inc., 110 B.R. 808, 813 (Bankr. W.D.
Tex. 1990).

### IV.   CONCERNS REGARDING CHAPTER 13 TRUSTEE "ADMINISTERING ILLEGAL ASSETS" ARE UNFOUNDED

UST argues that the Chapter 13 Trustee in the instant case "should not be compelled to administer illegal assets." UST Post-Hearing Brief, Doc. No. 173 at p. 4. This argument is misplaced. The instant matter is easily distinguishable from cases where administration of illegal assets was a live issue.

In In re Arenas, 535 B.R. at 848, 852, the Tenth Circuit upheld dismissal of a Chapter 7 proceeding because the Trustee would have had to administer actual marijuana assets: 25 non-exempt marijuana plants valued at $6,250. In the instant case, unlike Arenas, the Chapter 13 Standing Trustee is not only differently situated in that she would never be in the position to administer controlled substances in this matter, she has also been accepting monthly plan payments[6] from the Debtor, and has neither moved to dismiss nor objected to confirmation on cannabis grounds.

Historically, albeit under the prior Bankruptcy Act, trustees did not shy away from pursuing and administering illegal assets or illegal proceeds. In Geary v. Schwem, 280 Pa. 435, 124 A. 630 (1924), a vendor illegally sold liquor to a debtor when this was a violation of the United States

---

[6] https://www.ndc.org/a/portfolio/case-summary?c=WORC-2140248 (last visited November 18, 2022).

Constitution and Federal law.  See U.S. Const. amend. XVIII

(repealed 1933); National Prohibition Act, 41 Stat. 305 (1919).

Debtor was later adjudicated a bankrupt. An appointed trustee

filed an action under the Bankruptcy Act to recover funds paid

to the vendor as a preference.  Despite the apparent illegality

of the underlying transaction, the court allowed the matter to

proceed, concluding that it would violate public policy if the

vendor obtained a preference over honest creditors when the

vendor knowingly violated the law.  Id.  The issue of the

bankruptcy trustee administering fruits of illegal conduct was

not raised.

Similarly, in Keefe v. Clark, 287 F. 372 (D. Mass. 1923), a

Boston property owner petitioned the US District Court for the

District of Massachusetts for a return of a large quantity of

liquor ceased by Federal Agents pursuant to a Prohibition-

related warrant.  "He having become bankrupt pending these

proceedings, his trustees have appeared and maintain his

petition and his claim." Id. at 373.  The court found

irregularities with the scope and timing of the actions taken by

Federal law enforcement, held that the seizure was unlawful, and

ordered the return of the liquor presumably to the bankruptcy

trustees.  Id.  Despite the ongoing prohibition against

transportation and against sales of liquor, no issue was raised

as to the trustees taking possession of ostensible contraband

which was also alleged to have been the subject of prior illegal sales.

More recently, in In re Agriprocessors, Inc., Docket No. 08-02751, United States Bankruptcy Court for the Northern District of Iowa, the matter was converted from Chapter 11 to Chapter 7 despite the debtor having maintained a large workforce of undocumented immigrants and committing other crimes pre-petition, leading to "numerous federal criminal charges[.]"  In re Nevel Props. Corp.[7], No. 09-00415, 2012 Bankr. LEXIS 551, at *2-3.  The Chapter 7 Trustee administered the estate, notwithstanding the potential taint on the assets by serious criminal activity.  See supra at pp. 5-6.

Agriprocessors, Inc., further illustrates that there is "no need to convert the bankruptcy judge into an ombudsman without portfolio, gratuitously seeking out possible illegalities in every plan, a result that would be inimical to the basic function of bankruptcy judges in bankruptcy proceedings." Garvin v. Cook Invs. NW, SPNWY, LLC, 922 F.3d at 1036 (quoting In re Food City, Inc., 110 B.R. 808, 812 (Bankr. W.D. Tex. 1990)) (internal quotation marks and citations omitted).

---

[7] As explained in fn. 2, supra, this case is being cited solely for its concise summary of the events leading up to the Agriprocessors, Inc., bankruptcy.

Accordingly, the UST's concern regarding the role of the
Chapter 13 Standing Trustee in the instant case is both
historically inconsistent and misplaced.

## V.     FEDERAL GOVERNMENT'S RESPONSE TO GROWING STATE-SANCTIONED CANNABIS INDUSTRY

In the instant case, it is puzzling that the UST would take
the position that it did in light of clear signals from all
three branches of the Federal Government that the current
cannabis dichotomy between state and federal laws is untenable.
The legislative branch has spoken "through a series of
appropriations riders frequently called the Rohrabacher-Farr
Amendment." Fried v. Garland, No. 4:22-cv-164-AW-MAF, 2022 U.S.
Dist. LEXIS 203136, at *3 (N.D. Fla. Nov. 4, 2022). Via these
riders, "in every fiscal year since 2015, Congress has
prohibited the Department of Justice from 'spending funds to
prevent states' implementation of their own medical marijuana
laws.' That policy has broad ramifications given that 36 States
allow medicinal marijuana use and 18 of those States also allow
recreational use." Standing Akimbo, LLC v. United States, 141
S. Ct. 2236, 2237 (2021) (Thomas, J., respecting the denial of
certiorari) (quoting United States v. McIntosh, 833 F. 3d 1163,
1168 (9th Cir. 2016) (interpreting the rider to prevent
expenditures on the prosecution of individuals who comply with
state law)).

The executive branch has spoken as well, most notably via
the Cole Memo, in which the "Deputy Attorney[] General
encouraged federal prosecutors to decline prosecutions of state-
regulated marijuana dispensaries in most circumstances." High
Desert Relief, Inc. v. United States, 917 F.3d 1170, 1195 (10th
Cir. 2019). See James M. Cole, Deputy Attorney General,
Memorandum For All United States Attorneys: Guidance Regarding
Marijuana Enforcement (Aug. 29, 2013); but see Jeffrey B.
Sessions, Attorney General, Memorandum For All United States
Attorneys: Marijuana Enforcement (January 4, 2018) (revoking the
Cole Memo).  Notwithstanding, the revocation of the Cole Memo
did not appear to materially change the level of enforcement.
In re Way to Grow, Inc., 597 B.R. 111, 129 n.151 (Bankr. D.
Colo. 2018).

Most recently, on October 6, 2022, President Biden
announced that he had asked the Attorney General and the
Secretary of Health and Human Services to initiate a process for
expeditious review of how cannabis is scheduled under Federal
law.  See Statement from President Biden on Marijuana Reform,
(Oct. 6, 2022), https://www.whitehouse.gov/briefing-
room/statements-releases/2022/10/06/statement-from-president-
biden-on-marijuana-reform/.

The courts have spoken as well, noting that "Federal
Government's current approach is a half-in, half-out regime that

simultaneously tolerates and forbids local use of marijuana.
This contradictory and unstable state of affairs strains basic
principles of federalism and conceals traps for the unwary."
Standing Akimbo, LLC v. United States, 141 S. Ct. at 2237
(Thomas, J., respecting the denial of certiorari).  Notably, in
enforcing the dormant commerce clause by striking Maine's
restrictions on cannabis business ownership, the First Circuit
readily recognized a national market in cannabis, and applied
constitutional principles to protect it[8].  Ne. Patients Grp. v.
United Cannabis Patients & Caregivers of Me., 45 F.4th 542.

Thus, the UST's position in the instant case – vilifying
and seeking to deny relief to a gainfully and lawfully employed
debtor based solely on the type of wares his duly state-licensed
employer peddles – appears untenable as well.

## VI.   IN THE ALTERNATIVE, DEBTOR WOULD PROPOSE A PLAN FUNDED FROM ALTERNATIVE SOURCES

If this court denies dismissal but sustains the objection
to confirmation due to the nature of the Debtor's wages, Debtor
has previously indicated his intention to propose a plan that is
funded by income (or by liquidation of assets) unrelated to his
cannabis industry employment.

---

[8] The holding was limited to medical marijuana.

This approach is not novel in Chapter 13 cases.  See In re
McGinnis, 453 B.R. 770 (Bankr. D. Or. 2011) (court denied
confirmation but permitted the filing of an amended plan that
relied on funding from non-cannabis sources), In re Johnson, 532
B.R. 53 (debtor may remain in bankruptcy if he ceased his
marijuana business), but see infra.  See also Olson v. Van Meter
(In re Olson), 2018 Bankr. LEXIS 480, 2018 WL 989263 (B.A.P. 9th
Cir. Feb. 5, 2018) (dismissal vacated and remanded for further
findings on elderly debtor's actual knowledge of how her real
property was utilized).  "The common theme in all of these
Chapter 13 cases is the willingness of the bankruptcy court to
allow the voluntary debtor to propose a feasible plan that does
not rely on income received through a violation of the
Controlled Substances Act."  In re Cwnevada LLC, 602 B.R. at
733.

On this point, the UST cites In re Johnson, 532 B.R. 53,
for the proposition that cannabis-connected funds cannot be
effectively segregated as a practical matter.  However, the UST
ignores the holding of Johnson.  Mr. Johnson was a Chapter 13
debtor who owned and operated a Michigan business which
cultivated and sold marijuana to individuals and dispensaries.
He was found to be "engaged in business within the meaning of §
1304(a)."  Johnson, 532 B.R. at 57.  UST filed a Motion to
Dismiss Johnson's Chapter 13 proceeding on grounds similar to

those in the instant matter.  Id. at 54.  On the issue of

impossibility of segregation, the Johnson court equivocated by

first acknowledging that Johnson's "[r]esidence, his truck, and

all horticultural equipment, fertilizer and other supplies" are

utilized in his cannabis activities, id. at 58, but then also

permitting Mr. Johnson to remain in Chapter 13 and for him (and

thus the bankruptcy estate) to retain all of these assets

despite their obvious ties to ostensible criminal activity, so

long as Johnson ceased his marijuana commerce activities going

forward.  Id. at 59.  In denying the UST's Motion to Dismiss,

the Johnson court's only condition was that for the debtor to

remain in bankruptcy he must discontinue any marijuana

activities for the duration of the case and destroy any plants

or by-products in his possession.  Id.  Notably, the court did

not require the debtor to dispossess himself of assets purchased

with marijuana proceeds (thus leaving them as property of the

estate).  The court did not require the debtor to identify

existing funds that may be traceable to prior marijuana

activity, such as savings accounts, retirement funds, or other

bank accounts that could be used to fund the plan, nor require

the debtor to segregate these funds.  The court did not restrict

the debtor's continued use of his truck, residence, or other

paraphernalia, all of which have been previously found to be

instrumentalities of the marijuana activities.  In fact, the

Johnson court made no inquiry into any of these issues and the
opinion is altogether silent on these points.  This is contrary
to the UST's argument in the instant matter that cannabis-
related proceeds must be entirely "scrubbed" from family
finances before a plan can be funded with an alternative source
of funds.

In the instant case, UST also argues that funding the plan
from an alternative source would "shield the wages from [the]
illegal activity from creditors."  UST Post-Hearing Brief, Doc.
No. 173 at p. 16.  This is not the case.  Per the stipulation
entered-into in this matter with the Chapter 13 Trustee (Doc.
No. 131) and approved on March 11, 2022, (Doc. No. 149),
(hereinafter "Approved Stipulation" [9]), Debtor is already
obligated to propose a plan that pays a 100% dividend on the
unsecured claims (except for a student loan claim, which is
long-term, and will be paid outside the plan).  For the sake of
conserving resources, the Approved Stipulation provides that the
Debtor is to file this 100% amended plan within 30 days after
the resolution of the instant UST Motion.  But the Claims
Register in this matter indicates that the total amount of
allowed claims to be paid via this case is $24,051.73 (not

---

[9] The bankruptcy court may take judicial notice of its own docket.
LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d
1, 8 (1st Cir. 1999).

accounting for any additional attorneys fees that may be allowed
at a future date).  This amount is significantly less than the
$73,429.60 available to fund the plan and traceable directly to
the non-debtor spouse's retirement account withdrawal
(hereinafter "Retirement Withdrawal").  See Sch A/B, Line 17
(Doc. No. 20); Trustee's Objection to Confirmation (Doc. No. 44
at ¶ 7); Debtor's Trial Testimony.  The UST has not alleged, nor
can he, that these funds have any connection to any cannabis
activity, because according to Debtor's Schedule I (Doc. No.
20), the non-debtor spouse is employed by the US Department of
Defense.  The entire cost of the 100% plan can be funded by non-
debtor spouse's wages or by contributing a portion of the
Retirement Withdrawal to the plan.  No wages of the Debtor would
be necessary to fund the forthcoming 100% amended plan, thus
UST's argument that funding the plan with spousal funds would be
"shielding the wages he receives … to the detriment of his
creditors," UST Post-Hearing Brief, Doc. No. 173 at p. 17, is
unavailing, and this court should reject it.  All unsecured
creditors with allowed claims would be paid in full, with the
exception of the student loan to be paid outside the plan, and
not a penny would need to be sourced from the Debtor's wages.

     With this approach, Debtor's place or type of employment is
no longer relevant.

Finally, in light of the Approved Stipulation and the required 100% dividend to the unsecured creditors in this matter, it is puzzling that the UST would argue that "[d]ismissal is … in the best interest of the creditors and the estate."  UST Motion to Dismiss, Doc. No. 75 at p. 1.  It is clearly not so where, as here, creditors are receiving 100%.

**WHEREFORE**, the Debtor prays that this Court:

   A. Deny UST's Motion to Dismiss as the UST has failed to establish "cause" for dismissal under § 1307(c);

   B. Overrule UST's Objection to Confirmation as the UST has failed to establish a violation of § 1325(a)(3), **<u>or, in the alternative</u>**, order the Debtor to file an Amended Plan consistent with the Approved Stipulation funded by non-cannabis sources; and

   C. Grant such further relief as this Court considers equitable and just.

Respectfully submitted,
Scott H. Blumsack, Debtor,
By his Attorney,
/s/ Dmitry Lev
Dmitry Lev, Esq. BBO # 665236
Law Offices of D. Lev, PC
134 Main Street
Watertown, MA 02472
(617) 556-9990 office
dlev@levlaw.net

Dated:  November 18, 2022

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

In re:
    Scott H. Blumsack,
        Debtor

Case No. 21-40248
Chapter 13

**CERTIFICATE OF SERVICE**

I, Dmitry Lev, hereby certify that on November 18, 2022, in
accordance with the Bankruptcy Rules and the Local Bankruptcy
Rules of this Court, I electronically filed the foregoing
document in this matter with the United States Bankruptcy Court
for the District of Massachusetts using the CM/ECF system.

On information and belief, a Notice of Electronic Filing was
contemporaneously transmitted to the following CM/ECF
participants electronically:

- For the United States Trustee:  Richard King, Stephen E. Meunier
- For the Chapter 13 Trustee:  Denise M. Pappalardo
- For Creditor Matrix Financial Services Corp.:  Richard T. Mulligan
- For Creditor Massachusetts Department of Revenue:  Jodi B. Meade
- For Creditor Hanscom Federal Credit Union:  Lawson Williams

Pursuant to MEFR 9, "Transmission by the Court of the 'Notice of
Electronic Filing' constitutes service or notice of the filed
document…"

Respectfully submitted,
/s/  Dmitry Lev
Dmitry Lev, Esq.
BBO # 665236
Law Offices of D. Lev, PC
134 Main Street
Watertown, MA 02472
(617) 556-9990 office
dlev@levlaw.net

Dated:  November 18, 2022