## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| SCOTT H. BLUMSACK, | ) | Case No. 21-40248-EDK |
| | ) | |
| Debtor | ) | |
| | ) | |

### MEMORANDUM OF DECISION

Before the Court is a "Motion to Dismiss Chapter 13 Case and Objection to Confirmation of Debtor's Chapter 13 Plan" (the "Motion") filed by the United States trustee (the "Trustee") and the Debtor's opposition to the Motion which raise issues of apparent first impression. The debtor in this Chapter 13 bankruptcy case, Scott H. Blumsack (the "Debtor"), is employed by a marijuana[1] dispensary and proposes to use his wages from that employment to fund a Chapter 13 plan of reorganization. While other reported bankruptcy cases have addressed various issues involving the intersection of marijuana businesses and bankruptcy law, the Court has found none that involve facts directly on point to those here. In determining whether the Court should grant the Trustee's Motion and dismiss the case or deny confirmation of the Debtor's proposed Chapter 13 plan, the Court must determine whether there is "cause" and/or a lack of "good faith" within the meaning of the United States Bankruptcy Code, notwithstanding the fact that neither term is defined by the Code.[2] For the reasons set forth herein, the Court concludes that, under the specific facts presented, confirmation of the Debtor's Chapter 13 plan must be denied and the Debtor's bankruptcy case

---

[1] "Marijuana" and "cannabis" will be used interchangeably throughout this Memorandum of Decision.

[2] *See* 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code"). All statutory references are to provisions of the Bankruptcy Code unless otherwise stated.

1

will be dismissed.

I. FACTS AND TRAVEL OF THE CASE[3]

The Debtor commenced this case on April 1, 2021 by filing a voluntary petition under Chapter 13 of the Bankruptcy Code. On Schedule I, the Debtor listed his occupation as "Sales" at "Green Star Herbal," a retail cannabis dispensary. In September 2021, the Trustee filed the Motion presently before the Court, primarily seeking dismissal of the case, but also objecting to confirmation of the Debtor's proposed Chapter 13 plan. The Debtor opposed the Motion. The Court conducted an evidentiary hearing on March 11, 2022, at which only the Debtor testified.

As of September 2021 and at the time of trial, the Debtor no longer worked for Green Star Herbal, but was employed by TYCA Green, Inc. d/b/a Society Cannabis Co. ("TYCA Green"), a retailer, wholesaler, and producer of cannabis products. TYCA Green has a cultivation license, but its cultivation program is not currently underway, so it procures raw cannabis from outside the company which it uses to produce its own product lines. TYCA Green's products include (1) vaporizer cartridges filled with cannabis concentrate produced in-house; (2) cannabis edibles; and (3) pre-rolled, smokable products. As of December 2021, the Debtor was the general manager of a TYCA Green facility located in Clinton, Massachusetts. The Debtor is involved in all of the different business sectors at the Clinton facility, including retail, wholesale, production, marketing, and human resources. The Debtor is one of three on the Clinton facility's management team, which includes the Debtor, the chief executive officer, and the chief operating officer. The Debtor supervises the sixteen full-time employees at the Clinton facility. The Debtor set up the retail

---

[3] The following constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this matter by Federal Rules of Bankruptcy Procedure 1017(f), 3015(f), 7052, and 9014. The facts are drawn from the Debtor's testimony, the facts stipulated to by the parties, and matters of record of which the Court may take judicial notice.

operation at the Clinton facility and manages all aspects of the retail operation. The Debtor is licensed under Massachusetts law to dispense cannabis products, and he often covers shifts in the retail operation. The Debtor does not have any ownership interest in TYCA Green, nor has he been promised any. The Debtor is not aware of any profit-sharing plan in the business. The Debtor's paystubs indicate that he earns $75,000 per year.

The Debtor testified that, during the pandemic, his spouse accessed retirement funds and deposited what the Debtor believed to be more than $70,000 initially into their joint checking account and then transferred funds to a savings account. The Debtor testified that, in lieu of using the Debtor's wages to fund the Chapter 13 plan, the plan payments could instead be made from the retirement funds.

II.     POSITIONS OF THE PARTIES

   A.  **The Trustee**

Through the Motion and in the Trustee's post-trial brief, the Trustee has argued both that the Debtor's case should be dismissed and that the proposed Chapter 13 plan cannot be confirmed because the Debtor's activities in connection with his employment violate federal law. While Massachusetts state law permits the retail distribution of marijuana, the Trustee notes that marijuana is a Schedule I controlled substance under the federal Controlled Substances Act of 1970, 21 U.S.C. §§ 801 *et seq.* (the "CSA"), it remains a "federal crime 'to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance,'" *In re Way to Grow, Inc.,* 610 B.R. 338, 344 (D. Colo. 2019), and it also remains a crime to aid and abet violations of the CSA, *id.* (quoting 18 U.S.C. § 2(a)).

According to the Trustee, the fact that the Debtor has no ownership interest in TYCA Green

3

is immaterial, as the Debtor's managerial activities (including the marketing and retail dispensing of cannabis products) violate the CSA. The Trustee notes that liability under the CSA is broadly defined and extends not only to owners of marijuana-related businesses, but also to those persons who possess or dispense marijuana or who assist or conspire with a person or entity to violate the CSA. *See* 21 U.S.C. §§ 841, 846; 18 U.S.C. § 2. The Trustee, citing to *United States v. Gil,* 58 F.3d 1414, 1423 (9th Cir. 1995), says that the Debtor has engaged in such a conspiracy, and violates federal criminal law, by knowingly agreeing to engage in the business of distributing marijuana with the intent to further that distribution.

With respect to confirmation of the Debtor's proposed Chapter 13 plan, the Trustee contends that the Debtor cannot demonstrate that the Chapter 13 plan was proposed in good faith and not by any means forbidden by law as required by § 1325(a)(3) and cannot demonstrate that the filing of the petition was in good faith as required by § 1325(a)(7). Rejecting the Debtor's assertion that this case is distinguishable because the Debtor is a "mere employee" and the argument that the Chapter 13 trustee would not be administering illegal assets, but simply the Debtor's wages, the Trustee maintains that because the Debtor's wages are earned by activities that constitute violations of federal law (and those wages are property of the bankruptcy estate under § 1306), the Debtor cannot meet the good faith requirements for confirmation under either § 1325(a)(3) or (7). The Trustee argues that, regardless of the Debtor's personal motives for seeking bankruptcy relief, the Debtor cannot demonstrate objective good faith in filing the case or proposing a Chapter 13 plan because confirmation of the Chapter 13 plan would necessarily require the Chapter 13 trustee to administer proceeds derived from the Debtor's illegal activities and would require the Court to approve and oversee the administration of "illegal assets."

The Trustee also argues that the Chapter 13 plan cannot be confirmed because it has been

4

proposed by a "means forbidden by law" within the meaning of § 1325(a)(3), as the plan would be funded with money obtained through activities that violate federal law. The Trustee asks this Court to reject the holding in *Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.)*, where the court – interpreting an identical confirmation requirement under § 1129(a)(3)) – held that the statutory language "focuses not on the terms of the plan and its means of implementation but on the manner in which the plan 'has been proposed.'" 496 B.R. 644, 660 (B.A.P. 1st Cir. 2013). The Trustee instead urges the Court to follow the reasoning in *In re Manchester Oaks Homeowners Ass'n, Inc.,* 2014 WL 961167, 11-12, No. 11-10179-BFK (Bankr. E.D. Va. Mar. 12, 2014), and hold that, because the Debtor's plan relies on funding from illegal activities, the plan cannot be confirmed because it is proposed by a "means forbidden by law."

More importantly, the Trustee argues, for the foregoing reasons, not only should confirmation of the Chapter 13 plan be denied, but the case must be dismissed pursuant to § 1307(c)(5) because the Court could not confirm *any* plan filed in this case, and the Debtor is therefore ineligible to be a Chapter 13 debtor. Noting that the enumerated grounds constituting "cause" justifying dismissal under § 1307(c) are not exhaustive, the Trustee also says that cause for dismissal exists here because continuance of the Chapter 13 case would require the Chapter 13 trustee to administer proceeds from illegal activities. Furthermore, although the Debtor now offers to propose a plan that relies solely on the spouse's income, that option is not available because the Debtor's wages were commingled with his spouse's. Finally, the Trustee says the Court could not find that the case was filed in good faith and the case should be dismissed, as the Court should not countenance allowing the Debtor to continue his participation in an enterprise that violates federal criminal law while simultaneously enjoying the benefits of federal bankruptcy law.

5

### B. The Debtor

In his initial opposition to the Motion, the Debtor took issue with the Trustee's representation that the Debtor is committing federal crimes. The Debtor further posited that the Trustee's position in this case is untenable because the Trustee's argument, in the Debtor's view, suggests that *any* employee of a marijuana-involved business, including a warehouse attendant who stacks boxes or a web designer, is committing a crime. Further, the Debtor says that, given the marijuana industry's contribution to a wide spectrum of the Massachusetts economy, the Trustee's position would result in a large swath of the community – including the janitorial agency that cleans a dispensary, a pizza shop where dispensary employees get their lunch, Federal Express that delivers packages for a dispensary, the electric utility company, public schools, and perhaps even 2.3 million Walmart employees – being ineligible for bankruptcy relief because they derive an economic benefit from marijuana-related businesses. Instead, the Debtor contends that, based on the recent case of *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.,* 45 F.4th 542 (1st Cir. 2022), where the First Circuit Court of Appeals held that Maine's restriction on cannabis business ownership to Maine residents was unconstitutional under the dormant Commerce Clause, engagement in cannabis-related activity is not a bar to obtaining relief in federal courts.

With regard to confirmation of the Debtor's Chapter 13 plan and relying on *Irving Tanning,* 496 B.R. 644, the Debtor says that § 1325(a)(3)'s requirement that the plan be "proposed in good faith and not by any means forbidden by law" speaks only to the manner in which the plan is *proposed* and is not focused on the actual terms of the plan. Here, the Debtor argues, the Trustee has not presented any evidence that the proposal of the plan itself was not undertaken in good faith or by any means forbidden by law, so confirmation should not be denied.

6

With regard to dismissal of the case, the Debtor argues that the Trustee has failed to demonstrate a lack of good faith (or the existence of bad faith) in filing the case that would warrant dismissal under § 1307(c). The Debtor says that the Trustee has not met the Trustee's burden of demonstrating bad faith, because the Trustee did not provide evidence or argue for dismissal based on the factors articulated in *Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz),* i.e. "(1) the debtor's accuracy in stating [his] debts and expenses, (2) the debtor's honesty in the bankruptcy process, including whether he or she has attempted to mislead the court and whether he or she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) the debtor's motivation and sincerity in seeking Chapter 13 relief." 341 B.R. 371, 382-383 (B.A.P. 1st Cir. 2006) (citations omitted).

Moreover, the Debtor argues, a debtor's engagement in activities that violate non-bankruptcy law cannot be a *per se* bar to obtaining bankruptcy relief, since other bankruptcy cases have proceeded despite the fact that the debtors had engaged in "past, present, and possibly ongoing violations of applicable non-bankruptcy, civil and criminal laws," citing *In re Cwnevada LLC*, 602 B.R. 717, 728 n. 25 (Bankr. D. Nev. 2019) (collecting cases).

As for the Trustee's concerns about the Chapter 13 trustee administering "illegal assets," the Debtor responds on several fronts. First, the Debtor says this case is distinguishable because the Trustee would not actually be administering illegal assets but would be merely accepting payments from the Debtor's wages. In fact, the Debtor notes, the Chapter 13 trustee has already accepted payments and has not objected to confirmation on grounds that the funds are derived from activities that violate federal law. Next, the Debtor points to prohibition era cases, noting that in one case, a trustee was permitted to pursue a preference from a creditor who illegally sold

7

liquor to a debtor, citing *Geary v. Schwem,* 280 Pa. 435 (1934), and in another, the court ordered the return of liquor seized by federal agents to the trustee, citing *Keefe v. Clark,* 287 F. 372 (D. Mass. 1923). More recently, the Debtor says, a Chapter 11 case was not dismissed, but was converted "to one under Chapter 7 despite the debtor having maintained a large workforce of undocumented immigrants and committing other crimes pre-petition, leading to numerous federal criminal charges." Debtor's Post-Trial Brief, 15, Nov. 18, 2022, ECF No. 190 (citing *In re Nevel Props. Corp.*, 2012 Bankr. LEXIS 551, *2-3, No. 09-00415 (Bankr. N.D. Iowa Feb. 17, 2012); *In re: Agriprocessors, Inc.,* Docket No. 08-02751, Bankr. N.D. Iowa)).

More generally, the Debtor says that the Trustee's position in this case is "puzzling" due to "clear signals from all three branches of the Federal Government that the current cannabis dichotomy between state and federal laws is untenable," Debtor's Post-Trial Brief, 16, pointing to congressional legislation prohibiting the Department of Justice from spending funds to prevent states from implementing state medical marijuana laws, a 2013 executive branch memo in which the Deputy Attorney General encouraged federal prosecutors to decline prosecutions of state-related marijuana dispensaries in most circumstances,[4] an October 2022 presidential statement in which President Biden asked the Attorney General and the Secretary of Health and Human Services to review how cannabis is scheduled under the Federal law, and Justice Thomas's observation that "[o]nce comprehensive, the Federal Government's current approach is a half-in, half-out regime that simultaneously tolerates and forbids local use of marijuana," *Standing Akimbo, LLC. v. United States,* 141 S. Ct. 2236, 2237 (2021), *reh'g denied,* 142 S. Ct. 919 (2021).

In the alternative, the Debtor argues that, instead of dismissal, the Debtor should be permitted to file an amended plan funded by the wages or retirement withdrawal from his non-

---

[4] Although the Debtor acknowledges that the memo has been revoked, the Debtor says the level of enforcement has not materially changed.

debtor spouse – income that is wholly unrelated to the cannabis industry.  In keeping with other courts that have permitted debtors to continue in bankruptcy so long as the plan did not rely on income received through a violation of CSA,[5] the Debtor argues that a plan funded solely by his spouse's noncannabis-related income would essentially render the issue of his employment moot. If the Debtor were to propose such a plan, the Debtor says, dismissal is not in the best interest of creditors and the estate under § 1307(c), as the plan would provide a 100% dividend to unsecured creditors (with the exception of a long-term student loan claim proposed to be paid outside of the plan).

III.    DISCUSSION

   A. The Debtor's Violations of Federal Criminal Laws

When determining whether a party's actions have violated or continue to violate federal criminal laws in the civil context, the civil court applies a preponderance of the evidence standard. *United States v. Chin*, 41 F.4th 16, 25 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 338 (2022).  The preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [she] may find in favor of the party who has the burden."  *Barhoumi v. Obama*, 609 F.3d 416, 424 (D.C. Cir. 2010) (quoting *Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 622 (1993)).  While the Debtor did not dispute any of the facts relevant to an inquiry into whether his current or past activities violate federal criminal laws, the Debtor did not concede any such violations. Accordingly, the Court's inquiry in this case focuses not on weighing whether a particular relevant

---

[5] The Debtor cites to *Olson v. Van Meter (In re Olson)*, 2018 WL 989263, BAP No. NV–17–1168–LTiF (B.A.P. 9th Cir. Feb. 5, 2018); *In re Johnson,* 532 B.R. 53 (Bankr. W.D. Mich. 2015); and *In re McGinnis,* 453 B.R. 770 (Bankr. D. Or. 2011).

9

fact is more likely than not, but on whether the stipulated facts are sufficient to find federal criminal violations.

> The Controlled Substances Act (the "CSA") provides the relevant Federal legislative backdrop against which the current litigation stands. Passed in 1970, the CSA creates a "closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Gonzales v. Raich*, 545 U.S. 1, 10, 13 (2005). The CSA sets forth five schedules to classify and regulate the use of controlled substances. *Id*. . . . "Schedule I contains the most severe restrictions on access and use, and Schedule V the least." *Gonzales v. Oregon*, 546 U.S. 243, 250 (2006). Marijuana is classified under schedule I.

*Wright's Case*, 156 N.E.3d 161, 166 (Mass. 2020). The following federal criminal laws are relevant here:

1. 21 U.S.C. § 841(a)(1): "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally – (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

2. 21 U.S.C. § 844(a): "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice . . . ."

3. 21 U.S.C. § 856(a):

   (a) Unlawful acts

   Except as authorized by this subchapter, it shall be unlawful to –

   (1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance;

   (2) manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

4. 18 U.S.C. § 2:

   (a) Whoever commits an offense against the United States or aids, abets, counsels,

>  commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

5. 21 U.S.C.A. § 846: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

As reflected in the Debtor's Schedule I and the parties' stipulated facts, at the time the Debtor filed this case he worked in "sales" as a "budtender" for a retail dispensary of cannabis. According to *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/budtender (last visited January 17, 2023), a "budtender" is "a person who serves customers at an establishment where cannabis products are sold (such as a medical or recreational marijuana dispensary)." It is reasonable for the Court to infer that this means, at the time the case was filed, as part of his employment, the Debtor provided information about and sold cannabis products to customers. The Court finds, by a preponderance of the evidence, that the Debtor's actions during his employment selling cannabis as a budtender included distributing cannabis and possessing cannabis with intent to distribute cannabis (a controlled substance) in violation of 21 U.S.C. § 841, and possession of a controlled substance without a prescription in violation of 21 U.S.C. § 844(a). The Court also finds that as a budtender, the Debtor aided and abetted his employer, Green Star Herbal, in the unlawful distribution and possession of cannabis with intent to distribute, without a prescription, in violation of 18 U.S.C. § 2. Further, at the time the case was filed, the Court finds that the Debtor conspired with his employer to commit the crimes of distributing cannabis and possessing cannabis with intent to distribute in violation of 21 U.S.C.A. § 846.

The Court also finds, by a preponderance of the evidence, that the Debtor's current job responsibilities require that he act in violation of federal criminal statutes. The Debtor's current

11

employer, TYCA Green, is a retailer, wholesaler, and producer of cannabis products. TYCA Green procures raw cannabis and uses it to produce its own product lines. Therefore, TYCA Green's business involves manufacturing, distributing, or dispensing a controlled substance or possessing a controlled substance with intent to manufacture, distribute or dispense in violation of 21 U.S.C. § 841 and TYCA Green possesses cannabis without a prescription in violation of 21 U.S.C. § 844(a). The Court also reasonably infers that the TYCA Green facility in Clinton, Massachusetts is used as a "facility for manufacturing, storing, distributing, or using a controlled substance" in violation of 21 U.S.C. § 856.

The Court finds, by a preponderance of the evidence, that when the Debtor covers shifts in TYCA Green's retail operations, the Debtor's responsibilities include manufacturing, distributing, or dispensing a controlled substance or possessing a controlled substance with intent to manufacture, distribute or dispense in violation of 21 U.S.C. § 841. As the manager of the Clinton facility, the Debtor must "manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, **employee**, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance" in violation of 21 U.S.C. § 856 (emphasis supplied). And the Debtor's duties supervising TYCA Green's employees require that the Debtor support and promote all aspects of TYCA Green's business. The Court finds, by a preponderance of the evidence, that those responsibilities entail aiding and abetting and conspiracy to commit violations of federal criminal laws in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846.

### B. Good Faith

Multiple provisions of the Bankruptcy Code require the Court to find that a Debtor has

proceeded in good faith to obtain the protections and benefits of a Chapter 13 bankruptcy filing and to achieve confirmation of a Chapter 13 plan of reorganization. In the Code, "[t]he term 'good faith' is not specially defined, and the legislative history provides little insight into its meaning." *Berliner v. Pappalardo (In re Puffer),* 674 F.3d 78, 81 (1st Cir. 2012). In determining "good faith" (or the absence thereof), courts in this district apply the totality of the circumstances approach. *Id.* at 82; *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005) "In all events, good faith is a concept, not a construct. Importantly, it is a concept that derives from equity." *Puffer,* 674 F.3d at 82. "This matters because equitable concepts are peculiarly insusceptible to per se rules." *Id.* Since the term "good faith" is not defined in the Code, "the inquiry is necessarily a 'fact intensive determination.'" *Sullivan*, 326 B.R. at 212 (quoting *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992)). Moreover, regardless of a debtor's subjective intent, a lack of good faith may be found on an objective, rather than a subjective, basis. *See Arenas v. United States Trustee (In re Arenas)*, 535 B.R. 845, 852 (B.A.P. 10th Cir. 2015).

1. § 1325: Plan Confirmation Requirements

With respect to confirmation of a Chapter 13 plan of reorganization, "the burden is on the debtor to prove that each of the statutory criteria for confirmation is met." *Austin v. Bankowski,* 519 B.R. 559, 563 (D. Mass. 2014). In order to confirm a Chapter 13 plan, § 1325(a)(7) requires the Court to find that "the action of the debtor in filing the petition was in good faith." And § 1325(a)(3) requires the court to find that "the plan has been proposed in good faith and not by any means forbidden by law."

The Debtor argues that the Trustee has failed to establish a lack of good faith because the Trustee did not provide evidence regarding the various factors articulated in the *Gonzalez-Ruiz* case, 341 B.R. 371, 382-383 (B.A.P. 1st Cir. 2006). But, in determining whether good faith (or

13

the lack thereof) has been established, "[t]he hallmark of the totality of the circumstances test is that the factors to be considered may vary in each case." *Sullivan,* 326 B.R. at 212. The Debtor filed this voluntary Chapter 13 case while engaging in activities in the course of his employment that violate federal criminal laws and, in his new employment, the Court has found that his actions continue to violate federal criminal laws. The Debtor's Chapter 13 plan as currently proposed is to be funded by the wages derived from those illegal activities, which would require the Chapter 13 trustee to knowingly administer wages derived from an active participant in a criminal enterprise. Regardless of the Debtor's subjective intent in filing the case or proposing the current Chapter 13 plan (neither of which the Debtor testified to), the Court cannot find, under an objective standard, that the case was filed in good faith or that the plan was proposed in good faith as required by §§ 1325(a)(7) and (a)(3), since, from the inception of this case, the Debtor has engaged in and benefited from, and intends to continue engage in and benefit from, activities that violate federal criminal law. Accordingly, confirmation of the Chapter 13 plan must be denied.[6]

2. § 1307: "Cause" for Dismissal

With regard to the Trustee's request for dismissal of the case, the Trustee, as the moving party, bears the burden of proof. *Stevenson v. TND Homes I, LP (In re Stevenson),* 583 B.R. 573, 579 (B.A.P. 1st Cir. 2018). "The decision to dismiss or convert a chapter 13 case for cause is committed to the bankruptcy court's discretion." *Benoit v. Deutsche Bank Nat'l Trust Co. (In re Benoit),* 564 B.R. 799, 805 (B.A.P. 1st Cir. 2017) (citing *Howard v. Lexington Invs., Inc.*, 284 F.3d 320, 322 (1st Cir. 2002).

---

[6] Because the Court finds that the Chapter 13 plan was not proposed in good faith as required by § 1325(a)(3), the Court need not, and does not, decide whether the plan was proposed "by any means forbidden by law" under that section.

14

11 U.S.C. § 1307(c) provides: ". . . on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, **including** -. . ." 11 U.S.C. § 1307(c) (emphasis supplied). "There is only one element necessary to establish a prima facie case for dismissal of a [c]hapter 13 bankruptcy case or conversion of the case to [c]hapter 7 . . .; the moving party must show 'cause.'" 70 David M. Holliday, *Causes of Action* 2d 521 (rev. 2016). "Cause" is not defined in the Bankruptcy Code, but § 1307(c) includes a nonexclusive list of circumstances giving rise to "cause" justifying dismissal. *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 373 (2007). However, the enumerated grounds for cause under § 1307(c) do not limit this Court's authority to take appropriate action, including dismissal of the case, for an "atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id.* at 374-75; *see also* 11 U.S.C. § 102(3) (in the Bankruptcy Code, the terms "'includes' and 'including' are not limiting").

Courts in this circuit have consistently recognized that, "[a]lthough lack of good faith is not specifically enumerated as 'cause,' it is well established that lack of good faith (or bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case under § 1307(c)." *Sullivan*, 326 B.R. at 211. As the Court has previously found that the Debtor's actions in both filing the case and proposing the plan demonstrate an objective lack of good faith, the Court also finds that the Debtor's lack of good faith constitutes cause for dismissal or conversion of the case pursuant to § 1307(c).

Furthermore, the Court rules that dismissal or conversion is warranted under § 1307(c)(5), which provides that cause for dismissal or conversion includes "denial of confirmation of a plan

15

under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1307(c)(5). While the Debtor now says that he can propose a plan that is funded solely by the wages from the Debtor's spouse (which are not derived from engagement in federal crimes), the Debtor does not suggest that he will cease engaging in activities that violate federal criminal laws. Based on the circumstances here, the Court will not grant the Debtor additional time to file another plan or a modification of the plan, as such amendment or modification would be futile. Even if the plan were amended as proposed, the Court finds that the Debtor objectively lacks good faith in seeking the benefits and protections of federal bankruptcy laws while continuously and contemporaneously undertaking (and earning income from) actions that violate federal criminal laws.

Accordingly, the Court finds and rules that the Trustee has met the Trustee's burden to establish "cause" for dismissal or conversion of this case both for lack of good faith and pursuant to § 1307(c)(5). Neither party has requested conversion of this case to one under Chapter 7 in the event cause was found, and the Court rules that, having found cause under § 1307(c), dismissal of this case is appropriate.

### C. Abuse of process

Even if the facts of this case do not comfortably fit within the confines of §§ 1307(c) and/or 1325, the Court finds and rules that the case also must be dismissed for abuse of process. While conducting illegal activities, either individually or by a business, is not an express bar to filing a bankruptcy case under 11 U.S.C. § 109, bankruptcy courts possess "broad equitable power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code],'" *Johnson v. Home State Bank*, 501 U.S. 78, 88 (1991) (quoting 11 U.S.C. § 105),

and may take any action or make any determination necessary or appropriate to "prevent an abuse of process." 11 U.S.C. § 105.

As the court in *In re Johnson*, noted "federal judicial officers take an oath to uphold federal law, and countenancing the Debtor's continued operation of his marijuana business under the court's protection is hardly consistent with that oath." 532 B.R. 53, 56 (Bankr. W.D. Mich. 2015).[7] In rejecting the proposition that a debtor could continue to derive income from the operation of a marijuana business while using only his Social Security benefits to fund a Chapter 13 plan, the *Johnson* court rightly stated that "irrespective of any segregation of funds, the court and the Standing Trustee carrying out their respective statutory duties will inevitably support the Debtor's criminal enterprise." *Id.* at 57. Accordingly, the court held that the case would be dismissed if the Debtor did not cease all marijuana business activities, cease using property of the estate connected to the marijuana business and abandoned and destroyed all marijuana plants and by-products. *Id.* at 58-59.

Similarly, in *In re Rent-Rite Super Kegs W. Ltd.*, the court held that where a Debtor's operations violated the Controlled Substances Act, "even if the Debtor is never charged or prosecuted . . . a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime." 484 B.R. 799, 805 (Bankr. D. Colo. 2012).

The Debtor "has no constitutional or 'fundamental' right to a discharge in bankruptcy." *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Here, the Debtor has not indicated any intention to forego his federal criminal activities while this case is pending, even if he proposed a plan to be funded solely by his spouse's income. The Court agrees with the sentiments expressed by the

---

[7] *See* 28 U.S.C. § 453 and 5 U.S.C. § 3331.

*Johnson* and *Rent-Rite* courts and holds that it would be an abuse of process to permit the Debtor to obtain the protections and benefits of the federal bankruptcy laws while continuing to commit federal crimes. Accordingly, dismissal of this case is warranted pursuant to 11 U.S.C. § 105(a).

IV. <u>CONCLUSION</u>

The Debtor warns that a decision to dismiss this case, filed by a "mere employee" with no ownership interest in a marijuana business, may lead to vast denials of bankruptcy relief for other debtors with employment or other relationships with cannabis-related activities that are currently permitted by state law. The Court is unpersuaded by this "slippery slope" argument and does not need to and will not reach the question as to whether other employees, like a warehouse attendant or web designer for a marijuana dispensary, would be eligible for bankruptcy relief.

Today, the Court must decide only the case it has before it – a case involving a Debtor whose ongoing activities in the course of his employment constitute violations of federal criminal laws. For the reasons set forth above, the Court rules only that denial of confirmation of *this* Debtor's Chapter 13 plan and dismissal of *this* Debtor's case under § 1307 and § 105 are compelled based on the particular facts and circumstances of this case.

Regardless of whether the Debtor is or is not subject to prosecution under state laws, and regardless of whether the Debtor is ever actually prosecuted under existing federal law, the fact remains that this Court is bound, under the Supremacy Clause, by existing federal law. It is simply untenable that this Court would continue to extend the protections and benefits of the federal bankruptcy laws to a Debtor that continues to commit federal crimes.

The Debtor's observations regarding the positive contributions of the cannabis industry to the Massachusetts economy and complaints regarding the seemingly inconsistent policies and

18

enforcement related to federal crimes involving marijuana in the wake of state-decriminalization may be well-taken. But unless and until congressional action is taken to decriminalize cannabis, this Court is bound by those statutes.

For all the foregoing reasons, confirmation of the Debtor's Chapter 13 plan must be denied, and the Debtor's case must be dismissed. An order in conformity with this Memorandum will issue forthwith.

By the Court,

DATED: January 17, 2023

Elizabeth D. Katz
United States Bankruptcy Judge